UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

**FILED**

**NOV 12 2020**

U.S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.   S1-4:20-CR-00418-JAR (NAB) |
| | ) | |
| JAMES TIMOTHY NORMAN, | ) | Cts. I, II, and III |
| TERICA TANEISHA ELLIS, | ) | Cts. I and II |
| WAIEL REBHI YAGHNAM, and | ) | Cts. III, IV, V, VI, VII, and VIII |
| TRAVELL ANTHONY HILL, | ) | Cts. I and II |
| | ) | |
| Defendants. | ) | |

## **SUPERSEDING INDICTMENT**

The Grand Jury charges that:

### **INTRODUCTION**

At all times relevant to this Indictment:

1.  Andre Montgomery was born on October 14, 1994.

2.  Andre Montgomery's paternal uncle was **JAMES TIMOTHY NORMAN**.

3.  Andre Montgomery's father, the brother of **JAMES TIMOTHY NORMAN**, died in Los
    Angeles, California in 1994.

4.  Andre Montgomery's Missouri non-driver license indicated that his height was 5'11" and
    his weight was 185 pounds.

5.  At no point did Andre Montgomery ever seek or obtain medical treatment at the People's
    Health Center.

1

6. In August of 2014, Andre Montgomery completed a housing application in which he indicated that he was employed at a shop called "Tobacco Road," that his hourly wage was $7.25, and that in the month of July of 2014, he had earned $696.47.

## COUNT I
## [MURDER FOR HIRE CONSPIRACY: 18 U.S.C. § 1958]

7. Beginning at a time unknown to the Grand Jury, but up to and including March 14, 2016, and through the date of this Superseding Indictment, within the Eastern District of Missouri and elsewhere,

### JAMES TIMOTHY NORMAN,
### TERICA TANEISHA ELLIS, and
### TRAVELL ANTHONY HILL,

together with other persons known and unknown to the Grand Jury, did knowingly and intentionally combine, conspire, and agree to commit an offense against the United States of America, to wit, the crime of murder for hire in violation of Title 18, United States Code, Section 1958, by using and causing others to use facilities of interstate commerce, to wit, cellular telephones, with the intent that the murder of Andre Montgomery be committed in violation of the laws of the State of Missouri, as consideration for the receipt of, and as consideration for a promise and agreement to pay things of pecuniary value, namely money, along with other benefits. Said conspiracy offense resulted in the death of Andre Montgomery on March 14, 2016.

### OBJECT AND PURPOSE

8. The objects and purposes of the conspiracy were the murder of Andre Montgomery, the nephew of **JAMES TIMOTHY NORMAN,** and the obtaining of money as a result of and in exchange for the commission of Andre Montgomery's murder.

### MEANS AND METHODS

9. The means and methods by which the conspiracy was sought to be accomplished included, among other things, the following:

   (a) It was part of the conspiracy that on or about October 14, 2014, **JAMES TIMOTHY NORMAN** attempted to obtain a $250,000.00 life insurance policy on his 20-year-old nephew, Andre Montgomery, for which **JAMES TIMOTHY NORMAN** was the sole beneficiary, through Americo Financial Life and Annuity Insurance Company.   This application was later withdrawn.

   (b) It was further part of the conspiracy that on or about October 31, 2014, **JAMES TIMOTHY NORMAN** attempted to obtain a second life insurance policy on Andre Montgomery in the amount of $200,000.00, in addition to an accidental death rider in the amount of $200,000.00, and a ten-year-term rider in the amount of $50,000.00, through The Independent Order of Foresters (hereinafter "Forester's policy"). **JAMES TIMOTHY NORMAN** was the sole beneficiary on this policy.  This is the only policy that issued.

   (c) It was further part of the conspiracy that on or about March 16, 2015, **JAMES TIMOTHY NORMAN** attempted to obtain a replacement policy on Andre Montgomery through Royal Neighbors of America in the amount of $249,999.00, but the application was denied.

   (d) It was further part of the conspiracy that on or about September 18, 2015, **JAMES TIMOTHY NORMAN** attempted to obtain an additional life insurance policy on Andre Montgomery through United of Omaha Life Insurance Company in the amount of $300,000.00, but the application was denied.

(e) It was further part of the conspiracy that on or about September 24, 2015, **JAMES TIMOTHY NORMAN** attempted to obtain an additional life insurance policy on Andre Montgomery through The Capitol Life Insurance Company d.b.a. Liberty Bankers Life in the amount of $250,000.00, but the application was denied.

(f) It was further part of the conspiracy that the applications for all five of these life insurance applications on Andre Montgomery contained materially false information, including false statements regarding Andre Montgomery's income, occupation, health history, and family history.

(g) It was further part of the conspiracy that **JAMES TIMOTHY NORMAN** flew from Los Angeles, California to St. Louis, Missouri and arrived in St. Louis, Missouri on March 14, 2016.

(h) It was further part of the conspiracy that, on or about March 14, 2016, **JAMES TIMOTHY NORMAN** and **TERICA TANEISHA ELLIS** purchased pre-paid Tracfone cellular devices at a Walgreens located in the Central West End neighborhood of the City of St. Louis.

(i) It was further part of the conspiracy that **JAMES TIMOTHY NORMAN** and **TERICA TANEISHA ELLIS** communicated with one another for the duration of March 14, 2016 using the newly-purchased, pre-paid cellular devices.

(j) It was further part of the conspiracy that **TERICA TANEISHA ELLIS** advised Andre Montgomery to initiate all further communication with her on March 14, 2016 using her newly-purchased, prepaid cellular device.

(k) It was further part of the conspiracy that **TERICA TANEISHA ELLIS** communicated with Andre Montgomery throughout the day on March 14, 2016 for the purpose of determining his whereabouts.

(l) It was further part of the conspiracy that **TERICA TANEISHA ELLIS** used her pre-paid cellular device to communicate Andre Montgomery's locations to **JAMES TIMOTHY NORMAN**, **TRAVELL ANTHONY HILL**, and/or other co-conspirators throughout the day on March 14, 2016.

(m) It was further part of the conspiracy that, at approximately 7:07 p.m. (CST) on March 14, 2016, Andre Montgomery texted his location, "3964 natural bridge," to **TERICA TANEISHA ELLIS** on her newly-purchased, pre-paid cellular device.

(n) It was further part of the conspiracy that immediately upon learning Andre Montgomery's location, **TERICA TANEISHA ELLIS** relayed that address to **JAMES TIMOTHY NORMAN**, **TRAVELL ANTHONY HILL**, and/or other co-conspirators.

(o) It was further part of the conspiracy that in the 22 minutes after learning Andre Montgomery's location at 3964 Natural Bridge Avenue, **TERICA TANEISHA ELLIS** called, attempted to call, or sent text messages to **TRAVELL ANTHONY HILL** at least five (5) times using her newly purchased, pre-paid cellular device.

(p) It was further part of the conspiracy that **TERICA TANEISHA ELLIS** met Andre Montgomery at 3964 Natural Bridge Avenue, in the City of St. Louis, at approximately 8:00 p.m. (CST) on March 14, 2016 for the purpose of luring Andre Montgomery outside of the residence.

(q) It was further part of the conspiracy that Andre Montgomery was shot and killed in front of the residence at 3964 Natural Bridge Avenue at approximately 8:02 p.m. (CST).

(r) It was further part of the conspiracy that at 8:03 p.m. (CST), **TERICA TANEISHA ELLIS** called **JAMES TIMOTHY NORMAN** on his newly-purchased, pre-paid cellular device, then immediately began driving back to her home in Memphis, Tennessee.

(s) It was further part of the conspiracy that approximately five-and-a-half hours after the homicide, in the early morning hours of March 15, 2016, **JAMES TIMOTHY NORMAN** flew back to Los Angeles, California.

(t) It was further part of the conspiracy that on March 15, 2016, **JAMES TIMOTHY NORMAN** and **TERICA TANEISHA ELLIS** ceased all use of their pre-paid cellular devices.

(u) It was further part of the conspiracy that, between March 15, 2016 and March 17, 2016, **TERICA TANEISHA ELLIS** deposited over $9,000.00 in cash into multiple bank accounts in Memphis, Tennessee.

(v) It was further part of the conspiracy that, on March 16, 2016, **TRAVELL ANTHONY HILL** conversed with his brother, Tony Whitfield, via recorded jail calls to discuss Andre Montgomery's murder and **TRAVELL ANTHONY HILL**'s payment.

(w) It was further part of the conspiracy that on March 16, 2016, **TRAVELL ANTHONY HILL** accepted a $5,000.00 cash payment at the direction of **JAMES TIMOTHY NORMAN**.

(x) It was further part of the conspiracy that on March 18, 2016, **WAIEL REBHI YAGHNAM** and **JAMES TIMOTHY NORMAN** contacted The Independent Order of Foresters for the purpose of inquiring as to how to collect on the aforementioned Foresters policy.

(y) It was further part of the conspiracy that **JAMES TIMOTHY NORMAN** continued to contact The Independent Order of Foresters on March 21, 2016; August 1, 2016; August 15, 2016; August 26, 2016; and November 18, 2016 for the purpose of attempting to collect on the aforementioned Foresters policy.

(z) It was further part of the conspiracy that in September 2018, **JAMES TIMOTHY NORMAN** retained counsel who sent a letter to The Independent Order of Foresters demanding that they pay out on the aforementioned Foresters policy.

(aa)   It was further part of the conspiracy that in October 2018, **JAMES TIMOTHY NORMAN** submitted an Affidavit to The Independent Order of Foresters for the purpose of collecting on the aforementioned policy.

In violation of Title 18, United States Code, Section 1958.

### COUNT TWO
### [MURDER FOR HIRE: 18 U.S.C. §§ 1958 & 2]

The Grand Jury further charges that:

On or about March 14, 2016, in the City of St. Louis, within the Eastern District of Missouri,

**JAMES TIMOTHY NORMAN,**
**TERICA TANEISHA ELLIS, and**
**TRAVELL ANTHONY HILL,**

the defendants herein, aiding and abetting one another and/or others, used and caused others to use facilities of interstate commerce, to wit, cellular telephones, with the intent that the murder of

7

Andre Montgomery be committed in violation of the laws of the State of Missouri, as consideration for the receipt of, and as consideration for a promise and agreement to pay things of pecuniary value, namely money, along with other benefits.  Said offense resulted in the death of Andre Montgomery on March 14, 2016.

In violation of Title 18, United States Code, Sections 1958 and 2.

## COUNT 3
### [WIRE AND MAIL FRAUD CONSPIRACY: 18 U.S.C. § 1349]

10. The allegations contained in Paragraphs 1-6 are realleged and incorporated herein.

11. Beginning in or about October of 2014 and continuing until at least as late as September of 2019, in the Eastern District of Missouri and elsewhere, **JAMES TIMOTHY NORMAN** and **WAIEL REBHI YAGHNAM** the defendants herein, did voluntarily and intentionally combine, conspire, confederate and agree with each other and others known and unknown to the Grand Jury, to commit the following offense against the United States:

   (a) Having devised and intended to devise a scheme to obtain money and property by means of materially false and fraudulent pretenses and representations and for the purpose of executing such scheme, and attempting to do so, did knowingly cause and attempt to cause to be transmitted by means of wire communication in interstate commerce, writings, signs, and signals in the form of interstate and international telephone calls, all in violation of Title 18, United States Code, Section 1343.

   (b) Having devised and intended to devise a scheme to obtain money and property by means of materially false and fraudulent pretenses and representations, and for the purpose of executing such scheme, and attempting to do so, did knowingly cause and attempt to cause documents to be sent or delivered by any private or commercial interstate carrier, or knowingly cause to be delivered by mail or such

8

carrier according to the direction thereon, in violation of Title 18, United States Code, Section 1341.

All in violation of Title 18, United States Code, Section 1349.

## MANNER AND MEANS

12. In furtherance of the conspiracy and to effect the illegal objects thereof, defendants **JAMES TIMOTHY NORMAN** and **WAIEL REBHI YAGHNAM**, and others known and unknown to the Grand Jury, used the following ways, manner and means, among others, to commit wire fraud and mail fraud.

13. The primary purpose of the conspiracy was for **JAMES TIMOTHY NORMAN**, aided and abetted by **WAIEL REBHI YAGHNAM**, to obtain and to be able to collect on a life insurance policy on his nephew, Andre Montgomery, in the event of Andre Montgomery's death, by means of false and fraudulent representations regarding Montgomery's income, employment, net worth, medical history, family history, and the existence of other pending, issued or denied life insurance applications.

## AMERICO LIFE INSURANCE APPLICATION

14. On or about October 14, 2014, **JAMES TIMOTHY NORMAN** and **WAIEL REBHI YAGHNAM** caused to be completed and then submitted an application to Americo Financial Life and Annuity Insurance Company (hereinafter "Americo"), by which application **JAMES TIMOTHY NORMAN** sought a life insurance policy in the amount of $250,000.00 on his nephew, Andre Montgomery.

15. On the Americo application, **JAMES TIMOTHY NORMAN** and **WAIEL REBHI YAGHNAM** listed Andre Montgomery's correct name, social security number, and date of birth.

16. The contact phone number listed for Andre Montgomery by **JAMES TIMOTHY NORMAN** and **WAIEL REBHI YAGHNAM** on the Americo application was (314) 824-8970, a phone number to which **JAMES TIMOTHY NORMAN** had been the sole subscriber since 2011.

17. On or about October 14, 2014, **JAMES TIMOTHY NORMAN** signed the following attestation passage in the Americo life insurance application:

> Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.
>
> ...
>
> We have read this application and represent to Americo that the statements made on this application are true, complete and correctly recorded to the best of my/our knowledge and belief. I/We agree that Americo can rely on these statements.

18. On or about October 14, 2014, **WAIEL REBHI YAGHNAM** signed the following attestation passage in **JAMES TIMOTHY NORMAN**'s Americo life insurance application, stating as follows:

> I hereby certify that I have personally asked each question on this application to the Proposed Insured(s), that I have truly and accurately recorded on the application the information supplied by him/her, and that I have no reason to believe that any of the information provided is inaccurate or incomplete. If not, I have set forth my reservations in the "Agent Comments/Remarks" section above.

19. **JAMES TIMOTHY NORMAN** and **WAIEL REBHI YAGHNAM** indicated in the Americo life insurance application that **JAMES TIMOTHY NORMAN** would be the sole beneficiary on the policy in the event of Andre Montgomery's death.

20. **JAMES TIMOTHY NORMAN** and **WAIEL REBHI YAGHNAM** represented in the Americo life insurance application that **JAMES TIMOTHY NORMAN** would pay the monthly premium of $156.04 from his US Bank account ******** 7746.

21. **JAMES TIMOTHY NORMAN** and **WAIEL REBHI YAGHNAM** represented that Andre Montgomery was not under the care of a physician.

22. **JAMES TIMOTHY NORMAN** and **WAIEL REBHI YAGHNAM** falsely represented in the Americo life insurance application that Andre Montgomery had an annual income of $100,000.00.

23. **JAMES TIMOTHY NORMAN** and **WAIEL REBHI YAGHNAM** falsely represented in the Americo life insurance application that Andre Montgomery's height was 5'7" and that his weight was 165 pounds.

24. On October 7, 2014, **JAMES TIMOTHY NORMAN** and **WAIEL REBHI YAGHNAM** exchanged text messages regarding the submission of the life insurance application, as follows:

> **NORMAN:** I got him with me..What info do u need so when we link , we can just sign papers then be done.
> **NORMAN:** Don't want to talk about it in front of him.
> **YAGHNAM:** Ok. Well just answer the phone.
> **NORMAN:** He's with me
> **YAGHNAM:** I know.  Watch how I do it

25. Between October 16, 2014 and November 3, 2014, representatives of Americo repeatedly attempted to contact Andre Montgomery, by means of **JAMES TIMOTHY NORMAN**'s phone number, which appeared as Andre Montgomery's phone number on the life insurance application.

26. Representatives of Americo also attempted to contact **WAIEL REBHI YAGHNAM** via email and telephone with questions regarding the life insurance application, including the

reason that Andre Montgomery could not own the life insurance policy, rather than **JAMES TIMOTHY NORMAN**.

27. On Friday, October 31, 2014, **JAMES TIMOTHY NORMAN** and **WAIEL REBHI YAGHNAM** exchanged the following text messages:

    **NORMAN:**  Policy ?
    **YAGHNAM:** You should have by next Friday. They'll call u on
                 Monday. Act like you're Andre.
    **NORMAN:**  Ok
    **NORMAN:**  I ain't seen this n\*\*\*a in over a week Bro

28. The following Monday, November 3, 2014, **JAMES TIMOTHY NORMAN** and **WAIEL REBHI YAGHNAM** exchanged the following text messages:

    **YAGHNAM:** What's up. They're gonna call u. I need to talk to u
                 first
    **NORMAN:**  I didn't get email with info
    **YAGHNAM:** Did they call u?
    **NORMAN:**  Yep. I missed it.
    **NORMAN:**  They left call back info
    **YAGHNAM:** Callem back. Asap.
    **NORMAN:**  I need the info
    **NORMAN:**  B day , soc etc
    **YAGHNAM:** I just sent it
    **NORMAN:**  Ok

Approximately 20 minutes later on November 3, 2014, **JAMES TIMOTHY NORMAN** and **WAIEL REBHI YAGHNAM** exchanged the following text messages:

    **NORMAN:**  All good
    **YAGHNAM:** Cool

29. On December 8, 2014, after **JAMES TIMOTHY NORMAN** had obtained a life insurance policy from a separate insurance company, he and **WAIEL REBHI YAGHNAM** caused the Americo life insurance application to be withdrawn, which was still pending at that time.

**FORESTERS LIFE INSURANCE APPLICATION**

12

30. On or about October 31, 2014, **JAMES TIMOTHY NORMAN** and **WAIEL REBHI YAGHNAM** caused to be completed and then submitted an application to The Independent Order of Foresters (hereinafter "Foresters"), by which application **JAMES TIMOTHY NORMAN** sought a life insurance policy in the amount of $200,000.00, as well as an accidental death rider in the amount of $200,000.00, and a ten-year term rider of $50,000.00, on his nephew, Andre Montgomery.

31. The $200,000.00 accidental death rider would pay out in the event that Andre Montgomery died of something other than natural causes.

32. The $50,000.00 ten-year term rider would pay out in the event that Andre Montgomery died within 10 years of the policy's issuance.

33. On the Foresters application, **JAMES TIMOTHY NORMAN** and **WAIEL REBHI YAGHNAM** identified Andre Montgomery's correct name, social security number, driver's license number, and date of birth.

34. On or about October 31, 2014, **JAMES TIMOTHY NORMAN** signed the following attestation passage in the Foresters life insurance application:

> I, as evidenced by my signature(s) in this Application, declare that: 1) I have reviewed this Application. 2) I was asked every question that applies to me and provided the answers shown, in this Application, to these questions. 3) The statements, answers, and representations contained in this Application are full, complete and true, to the best of my knowledge and belief.

35. On or about October 31, 2014, **WAIEL REBHI YAGHNAM** signed the following attestation passage in **JAMES TIMOTHY NORMAN**'s Foresters life insurance application, stating as follows:

> Unless specifically stated otherwise in the Producer Report, I certify each of the following: a) I am not aware of undisclosed information about the health, habits or lifestyle of the proposed

insured or a child, identified in this Application, that might affect insurability; b) I personally met with the proposed insured, owner and each child and reviewed the document(s) used to verify identity and birth date; c) I asked the proposed insured, the parent/legal guardian if the proposed insured is a juvenile, and/or the owner each question as written in this Application to which an answer is shown, and recorded the answers as given to me by each person; d) This application was reviewed by each person signing in the Signature Section before it was signed by that person.

36. **JAMES TIMOTHY NORMAN** and **WAIEL REBHI YAGHNAM** indicated in the Foresters life insurance application that **JAMES TIMOTHY NORMAN** would be the sole beneficiary on the policy in the event of Andre Montgomery's death.

37. **JAMES TIMOTHY NORMAN** and **WAIEL REBHI YAGHNAM** represented in the Foresters life insurance application that **JAMES TIMOTHY NORMAN** would pay the monthly premium of $185.16 from his US Bank account ******** 7746.

38. On or about October 31, 2014, **JAMES TIMOTHY NORMAN** and **WAIEL REBHI YAGHNAM** represented in the Foresters life insurance application that Andre Montgomery had an annual income of $28,000.00, despite having represented on October 14, 2014 that Andre Montgomery had an annual income of $100,000.00 in the Americo life insurance application.

39. **JAMES TIMOTHY NORMAN** and **WAIEL REBHI YAGHNAM** falsely represented in the Foresters life insurance application that Andre Montgomery had a net worth of $200,000.00.

40. **JAMES TIMOTHY NORMAN** and **WAIEL REBHI YAGHNAM** falsely represented in the Foresters life insurance application that Andre Montgomery's height was 5'7" and that his weight was 165 pounds.

41. **JAMES TIMOTHY NORMAN** falsely indicated in the Foresters life insurance application that his relationship to Andre Montgomery was both as his uncle and as his employer, when in fact, **JAMES TIMOTHY NORMAN** had no employment relationship with Andre Montgomery.

42. **JAMES TIMOTHY NORMAN** falsely indicated in the Foresters life insurance application that Andre Montgomery's father was living, 42 years-old, and healthy, when in fact, Andre Montgomery's father, the brother of **JAMES TIMOTHY NORMAN**, had died in 1994.

43. **JAMES TIMOTHY NORMAN** and **WAIEL REBHI YAGHNAM** falsely represented in the Foresters life insurance application that Andre Montgomery had received a "regular check-up" from the attending physician at the People's Health Clinic in December of 2013.

44. **JAMES TIMOTHY NORMAN** and **WAIEL REBHI YAGHNAM** falsely represented in the Foresters life insurance application that there was no other life insurance application pending for the proposed insured with Foresters or another insurer, when in fact, the Americo life insurance application submitted by **JAMES TIMOTHY NORMAN** and **WAIEL REBHI YAGHNAM** was still pending.

45. On November 6, 2014, Foresters issued a life insurance policy on Andre Montgomery with a face amount of $200,000.00, an accidental death rider of $200,000.00 and a ten-year term insurance rider of $50,000.00. **JAMES TIMOTHY NORMAN** was the policy owner and sole beneficiary.

<u>**ROYAL NEIGHBORS LIFE INSURANCE APPLICATION**</u>

46. On March 16, 2015, **JAMES TIMOTHY NORMAN** and **WAIEL REBHI YAGHNAM** exchanged the following text messages:

> **YAGHNAM:** I just contracted with this other company.  I can get better cash value on Andres policy and MORE COVERAGE for what ur paying.  U want me to transfer it?
>
> **YAGHNAM:** Instead of 200k it will be 300k.
>
> **NORMAN:**  Will he have to resign shit ?
>
> **NORMAN:**  Re-sign
>
> **YAGHNAM:** Na.  I can transfer
>
> **NORMAN:**  Ok . . Cause he wilding out here
>
> **YAGHNAM:** I got u
>
> **NORMAN:**  Aint even see the n\*\*\*a

47. On March 16, 2015, **JAMES TIMOTHY NORMAN** and **WAIEL REBHI YAGHNAM** caused to be completed an application to Royal Neighbors of America (hereinafter "Royal Neighbors"), by which application **JAMES TIMOTHY NORMAN** sought a life insurance policy in the amount of $249,999.00, as well as an accidental death rider in the amount of $249,999.00, on his nephew, Andre Montgomery.

48. The $249,999.00 accidental death rider would pay out in the event that Andre Montgomery died of something other than natural causes.

49. Policies with a face amount or rider amount under $250,000.00 did not require the insured to have a physical examination in connection with the policy application.

50. On the Royal Neighbors application, **JAMES TIMOTHY NORMAN** and **WAIEL REBHI YAGHNAM** identified Andre Montgomery's correct name, driver's license number, social security number and date of birth.

51. The signature of **JAMES TIMOTHY NORMAN** appears on the Royal Neighbors application acknowledging that "[a]ny person who knowingly presents a false statement in an application for insurance may be guilty of a criminal offense and subject to penalties under state law."

52. On or about March 16, 2015, **WAIEL REBHI YAGHNAM** signed an attestation in the Royal Neighbors life insurance application indicating that he had "personally review[e]d the I.D. of the Proposed Insured," Andre Montgomery.

53. **JAMES TIMOTHY NORMAN** and **WAIEL REBHI YAGHNAM** indicated in the Royal Neighbors life insurance application that **JAMES TIMOTHY NORMAN** would be the sole beneficiary on the policy in the event of Andre Montgomery's death.

54. **JAMES TIMOTHY NORMAN** and **WAIEL REBHI YAGHNAM** indicated in the Royal Neighbors life insurance application that **JAMES TIMOTHY NORMAN** would pay the monthly premium of $187.06 from his US Bank account ******** 7746.

55. On March 16, 2015, **JAMES TIMOTHY NORMAN** and **WAIEL REBHI YAGHNAM** represented in the Royal Neighbors life insurance application that Andre Montgomery had an annual income of $50,000.00, despite having represented in the Americo life insurance application on October 14, 2014 that Andre Montgomery had an annual income of $100,000.00, and in the Foresters life insurance application on October 31, 2014, that Andre Montgomery had an annual income of $28,000.00.

56. **JAMES TIMOTHY NORMAN** and **WAIEL REBHI YAGHNAM** falsely represented in the Royal Neighbors life insurance application that Andre Montgomery had a net worth of $200,000.00.

57. **JAMES TIMOTHY NORMAN** and **WAIEL REBHI YAGHNAM** falsely indicated in the Royal Neighbors life insurance application that his relationship to Andre Montgomery was both as his uncle and as his employer, when in fact, **JAMES TIMOTHY NORMAN** had no employment relationship with Andre Montgomery.

58. **JAMES TIMOTHY NORMAN** and **WAIEL REBHI YAGHNAM** falsely represented
    that Andre Montgomery had received an annual check-up from the attending physician at
    the People's Choice Centers in September of 2014, despite the fact that Andre Montgomery
    had never been seen or treated at that clinic.

59. On March 17, 2015, **WAIEL REBHI YAGHNAM** transmitted the life insurance
    application to Royal Neighbors via facsimile.

60. On March 17, 2015, **JAMES TIMOTHY NORMAN** and **WAIEL REBHI YAGHNAM**
    exchanged the following text messages:

> **NORMAN:** How long is that change process gonna take ?
> **YAGHNAM:** A week.
> **YAGHNAM:** I took care of everything.
> **NORMAN:** I wanna sign papers while I'm in town if I have to
> **NORMAN:** Ok
> **NORMAN:** U need another check?
> **YAGHNAM:** It's going to be 250k.  Otherwise he would've had to
> take a physical for more than that.
> **NORMAN:** Ok
> **YAGHNAM:** if I do need a check, you can just take a picture of a
> voided check.  Just as long as the account numbers
> are legible. And just text it to me.
> **NORMAN:** Double on accidental ?
> **NORMAN:** Ok
> **YAGHNAM:** of course so it would be $500,000 in case of an
> accident
> **NORMAN:** Ok

61. On April 8, 2015, **JAMES TIMOTHY NORMAN** and **WAIEL REBHI YAGHNAM**
    exchanged the following text messages:

> **YAGHNAM:** I am going to keep Andre with Forester's for now.
> **NORMAN:** Can't do the Change ?
> **NORMAN:** Ur call
> **YAGHNAM:** They need his dr. Info
> **NORMAN:** Yeah .. Leave that s**t alone
> **NORMAN:** Doesn't have one .. And I ain't seen the lil dude in
> weeks
> **YAGHNAM:** Right

62. The Royal Neighbors policy ultimately did not issue.

## UNITED OF OMAHA LIFE INSURANCE APPLICATION

63. On September 18, 2015, **JAMES TIMOTHY NORMAN** and **WAIEL REBHI YAGHNAM** caused to be completed and submitted an application to United of Omaha Life Insurance Company (hereinafter "Omaha"), by which application **JAMES TIMOTHY NORMAN** sought a life insurance policy in the amount of $300,000.00, as well as an accidental death rider in the amount of $100,000.00, on his nephew, Andre Montgomery.

64. The $100,000.00 accidental death rider would pay out in the event that Andre Montgomery died of something other than natural causes.

65. In the Omaha application, **JAMES TIMOTHY NORMAN** and **WAIEL REBHI YAGHNAM** identified Andre Montgomery's correct name, social security number, driver's license number, and date of birth.

66. On or about September 18, 2015, **JAMES TIMOTHY NORMAN** authorized his electronic signature next to an attestation indicating that "I represent the information above is true and complete. . . . Any person who knowingly presents a false statement in an application for insurance may be guilty of a criminal offense and subject to penalties under state law."

67. **JAMES TIMOTHY NORMAN** and **WAIEL REBHI YAGHNAM** indicated in the Omaha life insurance application that **JAMES TIMOTHY NORMAN** would be the sole beneficiary on the policy in the event of Andre Montgomery's death.

68. **JAMES TIMOTHY NORMAN** and **WAIEL REBHI YAGHNAM** indicated in the Omaha life insurance application that **JAMES TIMOTHY NORMAN** would pay the monthly premium of $141.36 from his US Bank account ******** 7746.

69. **JAMES TIMOTHY NORMAN** and **WAIEL REBHI YAGHNAM** falsely represented in the Omaha life insurance application that Andre Montgomery's height was 5'7" and that his weight was 165 pounds.

70. **JAMES TIMOTHY NORMAN** and **WAIEL REBHI YAGHNAM** falsely represented in the Omaha life insurance application that Andre Montgomery had an annual income of $65,000.00.

71. **JAMES TIMOTHY NORMAN** and **WAIEL REBHI YAGHNAM** falsely represented in the Omaha life insurance application that Andre Montgomery had not used any form of tobacco in the past 12 months.

72. On or about September 18, 2015, **JAMES TIMOTHY NORMAN** and **WAIEL REBHI YAGHNAM** falsely represented in the Omaha life insurance application that there was no other life insurance application pending or in force for the proposed insured, when in fact, the Foresters insurance policy was in force at the time **JAMES TIMOTHY NORMAN** and **WAIEL REBHI YAGHNAM** submitted the Omaha life insurance application.

73. On September 18, 2015, **WAIEL REBHI YAGHNAM** sent **JAMES TIMOTHY NORMAN** the following text message:

> **YAGHNAM:** I changed Andres insurance to Mutual of Omaha. Incase they try to call you. I've been trying to get in contact with you. Your premium went from $189 to $141. You're welcome. And if u wanted to make the benefit over a mil I coulda made it happen for $300 a month. Call me man

74. On or about September 18, 2015, **WAIEL REBHI YAGHNAM** submitted electronically the Omaha life insurance application.

75. The Omaha policy ultimately did not issue.

### THE CAPITOL LIFE/LIBERTY INSURANCE COMPANY APPLICATION

76. On or about September 24, 2015, **JAMES TIMOTHY NORMAN** and **WAIEL REBHI YAGHNAM** caused to be completed an application to The Capitol Insurance Company d.b.a. Liberty Bankers Life (hereinafter "Liberty"), by which application **JAMES TIMOTHY NORMAN** sought a life insurance policy in the amount of $250,000.00, as well as an accidental death and dismemberment rider in the amount of $250,000.00, on his nephew, Andre Montgomery.

77. The $250,000.00 accidental death rider would pay out in the event that Andre Montgomery died of something other than natural causes.

78. In the Liberty application, **JAMES TIMOTHY NORMAN** and **WAIEL REBHI YAGHNAM** identified Andre Montgomery's correct name, social security number, driver's license number, and date of birth.

79. **JAMES TIMOTHY NORMAN** and **WAIEL REBHI YAGHNAM** indicated in the Liberty life insurance application that **JAMES TIMOTHY NORMAN** would be the sole beneficiary on the policy in the event of Andre Montgomery's death.

80. **JAMES TIMOTHY NORMAN** and **WAIEL REBHI YAGHNAM** indicated in the Liberty life insurance application that **JAMES TIMOTHY NORMAN** would pay the monthly premium of $183.50 from his US Bank account ******** 7746.

81. **JAMES TIMOTHY NORMAN** and **WAIEL REBHI YAGHNAM** falsely represented in the Liberty life insurance application that Andre Montgomery had an annual income of $100,000.00.

82. **JAMES TIMOTHY NORMAN** and **WAIEL REBHI YAGHNAM** falsely represented in the Liberty life insurance application that Andre Montgomery had a net worth of $200,000.00.

83. **JAMES TIMOTHY NORMAN** and **WAIEL REBHI YAGHNAM** falsely represented in the Liberty life insurance application that Andre Montgomery's height was 5'7" and that his weight was 165 pounds.

84. **JAMES TIMOTHY NORMAN** and **WAIEL REBHI YAGHNAM** falsely represented in the Liberty life insurance application that Andre Montgomery had received a physical from the attending physician at the Barnes Jewish Hospital in August of 2014.

85. On September 22, 2015, **WAIEL REBHI YAGHNAM** and **JAMES TIMOTHY NORMAN** exchanged the following text messages:

> **YAGHNAM:** Yo we need to do that interview today. And another one with liberty.
> **YAGHNAM:** Pleaer give me 15 min to get this done
> **YAGHNAM:** Bro, It hought you said you were going to do the interview for me
> **NORMAN:** Hey can u text me the info I need . .
> **NORMAN:** The bday , social number .. What ever I need to answer the questions
> **YAGHNAM:** Yea. But I wanna prep u because it's 2 companies. If u give me 15 min I promise it'll be done. Ima text u everything.
> **NORMAN:** Ok … I can't talk cause I with these suit and tie Mfs

86. On September 23, 2015, **WAIEL REBHI YAGHNAM** and **JAMES TIMOTHY NORMAN** exchanged the following text messages:

> **YAGHNAM:** Andre Montgomery

>           Social Security #***-**-8196
>           Date of Birth 10-14-1994
>           The last time you went to the doctor was in October
>           2014 for a physical at Barnes Jewish Hospital
>           Call Mutual of Omaha at 800-775-3000 to do the
>           interview man.

**YAGHNAM:** We may have to make Andre the owner of the policy
and then I'll switch names in six months. They won't
let you be the owner off top

**NORMAN:** No

**NORMAN:** That ain't gonna work

**NORMAN:** Don't switch owner .. Leave it alone then

**YAGHNAM:** He don't have to know

**YAGHNAM:** Ok

**NORMAN:** He might not make it 6 months bro . . .

**NORMAN:** Not kidding

**YAGHNAM:** Damn

**YAGHNAM:** You'll still be the beneficiary.

**YAGHNAM:** Just not the owner.

>                   . . .

**YAGHNAM:** So if he makes it 30 years you'll get all your money
back.

**NORMAN:** Oh ok gotcha

**YAGHNAM:** But if he dies before you'll get the benefit

**YAGHNAM:** U thought I meant beneficiary instead of owner.

**NORMAN:** Yeah ..

**NORMAN:** Don't speak the lingo

**YAGHNAM:** You can still be the beneficiary on all of the policies.
Just make the call right quick

87. On September 24, 2015, **WAIEL REBHI YAGHNAM** transmitted the life insurance

application to Liberty via facsimile.

88. On September 28, 2015, **WAIEL REBHI YAGHNAM** and **JAMES TIMOTHY**

**NORMAN** exchanged the following text messages:

**YAGHNAM:** What's up man. This is Wally. If you can do me a
HUGE favor and get these interviews done today I
would really appreciate it. I'll win a trip if you do.
We can do it on a 3 way call and knock it out. And if
you let me handle all your employees we can talk
about kick backs. I know you're busy

**NORMAN:** Man .. I'm worried about that thing bro ..

> **NORMAN:**   I don't want to be recorded on that call .. Shit has changed
> **YAGHNAM:** Oh ok.
> **NORMAN:**   He ain't gonna be around much longer

89. The Liberty policy ultimately did not issue.

## CONSPIRATORS' ATTEMPTS TO COLLECT ON THE FORESTERS LIFE INSURANCE POLICY

90. On March 18, 2016, following the murder of Andre Montgomery on March 14, 2016, **WAIEL REBHI YAGHNAM** placed two telephone calls to Foresters seeking to file a claim on the life insurance policy **JAMES TIMOTHY NORMAN** owned on Andre Montgomery.

91. On March 21, 2016, **JAMES TIMOTHY NORMAN** contacted Foresters twice by telephone seeking to file a claim on the life insurance policy he had taken out on Andre Montgomery.

92. On March 30, 2016, **WAIEL REBHI YAGHNAM** placed a phone call to Foresters lasting 10 minutes and two seconds.

93. On May 21, 2016, **JAMES TIMOTHY NORMAN** submitted to Foresters via US mail a written claim on his life insurance policy on Andre Montgomery.

94. On July 6, 2016, **JAMES TIMOTHY NORMAN** received a letter via US mail from Foresters indicating that Foresters still had not received the finalized police, toxicology, and coroner's reports necessary in order to process his claim on the life insurance policy.

95. Between August of 2016 and November of 2016, **JAMES TIMOTHY NORMAN** repeatedly contacted Foresters in connection with his attempt to claim the life insurance policy.

96. In or about September of 2018, **JAMES TIMOTHY NORMAN** retained an attorney to represent him in connection with his attempt to claim the Foresters life insurance policy. That attorney subsequently sent a letter to Foresters indicating that **JAMES TIMOTHY NORMAN** had authorized the attorney to file a lawsuit for failure to promptly pay the life insurance claim.

97. On September 26, 2019, Foresters sent **JAMES TIMOTHY NORMAN** a letter via US mail advising **JAMES TIMOTHY NORMAN** that as of the date of the letter, Foresters still had not received all of the documentation required to adjudicate his claim on the life insurance policy.

All in violation of Title 18, United States Code, Section 1349.

### COUNT 4
### [AGGRAVATED IDENTITY THEFT: 18 U.S.C. § 1028A]

On or about October 14, 2014, in the Eastern District of Missouri, the defendant,

### WAIEL REBHI YAGHNAM,

did knowingly transfer, possess, and use, without lawful authority, a means of identification of another person, to wit, social security number *** ** 8196 lawfully issued to Andre Montgomery, during and in relation to a felony violation enumerated in 18 U.S.C. § 1028A(c), to wit, conspiracy to commit wire and mail fraud in violation of 18 U.S.C. § 1349, knowing that the means of identification belonged to another actual person.

All in violation of Title 18, United States Code, Section 1028A(a)(1).

### COUNT 5
### [AGGRAVATED IDENTITY THEFT: 18 U.S.C. § 1028A]

On or about October 31, 2014, in the Eastern District of Missouri, the defendant,

### WAIEL REBHI YAGHNAM,

did knowingly transfer, possess, and use, without lawful authority, means of identification of another person, to wit, Andre Montgomery's date of birth and social security number *** ** 8196, during and in relation to a felony violation enumerated in 18 U.S.C. § 1028A(c), to wit, conspiracy to commit wire and mail fraud in violation of 18 U.S.C. § 1349, knowing that the means of identification belonged to another actual person.

All in violation of Title 18, United States Code, Section 1028A(a)(1).

## COUNT 6
## [AGGRAVATED IDENTITY THEFT: 18 U.S.C. § 1028A]

On or about March 16, 2015, in the Eastern District of Missouri, the defendant,

### WAIEL REBHI YAGHNAM,

did knowingly transfer, possess, and use, without lawful authority, a means of identification of another person, to wit, Andre Montgomery's name, date of birth, and driver's license number ******1009, during and in relation to a felony violation enumerated in 18 U.S.C. § 1028A(c), to wit, conspiracy to commit wire and mail fraud in violation of 18 U.S.C. § 1349, knowing that the means of identification belonged to another actual person.

All in violation of Title 18, United States Code, Section 1028A(a)(1).

## COUNT 7
## [AGGRAVATED IDENTITY THEFT: 18 U.S.C. § 1028A]

On or about September 18, 2015, in the Eastern District of Missouri, the defendant,

### WAIEL REBHI YAGHNAM,

did knowingly transfer, possess, and use, without lawful authority, a means of identification of another person, to wit, Andre Montgomery's name, date of birth, driver's license number ******1009, and social security number social security number *** ** 8196, during and in relation to a felony violation enumerated in 18 U.S.C. § 1028A(c), to wit, conspiracy to commit

26

wire and mail fraud in violation of 18 U.S.C. § 1349, knowing that the means of identification belonged to another actual person.

All in violation of Title 18, United States Code, Section 1028A(a)(1).

### COUNT 8
### [AGGRAVATED IDENTITY THEFT: 18 U.S.C. § 1028A]

On or about September 24, 2015, in the Eastern District of Missouri, the defendant,

**WAIEL REBHI YAGHNAM,**

did knowingly transfer, possess, and use, without lawful authority, a means of identification of another person, to wit, Andre Montgomery's name, date of birth, driver's license number ******1009, and social security number *** ** 8196, during and in relation to a felony violation enumerated in 18 U.S.C. § 1028A(c), to wit, conspiracy to commit wire and mail fraud in violation of 18 U.S.C. § 1349, knowing that the means of identification belonged to another actual person.

All in violation of Title 18, United States Code, Section 1028A(a)(1).

FORFEITURE ALLEGATION

The Grand Jury further finds by probable cause that:

1. Pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461, upon conviction of an offense in violation of Title 18, United States Code, Sections 1349 or 1958, as set forth in Counts I through III, the defendants shall forfeit to the United States of America any property, real or personal, constituting or derived from any proceeds traceable to said violation.

2. Subject to forfeiture is a sum of money equal to the total value of any property, real or personal, constituting or derived from any proceeds traceable to offenses charged in Counts I through III.

3.     Specific property subject to forfeiture includes, but is not limited to, the

following:

      a.     Check No. 0000601472 made payable to James T Norman issued by

           Foresters Financial to James T Norman in the amount of $4,476.49 with

           reference number 0691715CO.

4.     If any of the property described above, as a result of any act or omission

of the defendant(s):

      a.     cannot be located upon the exercise of due diligence;

      b.     has been transferred or sold to, or deposited with, a third party;

      c.     has been placed beyond the jurisdiction of the court;

      d.     has been substantially diminished in value; or

      e.     has been commingled with other property which cannot be divided

           without difficulty,

the United States of America will be entitled to the forfeiture of substitute property pursuant to

Title 21, United States Code, Section 853(p).

A TRUE BILL.


_____

FOREPERSON

JEFFREY B. JENSEN
United States Attorney


_____

ANGIE E. DANIS, #64805MO
GWENDOLYN E. CARROLL, #7657003NY
Assistant United States Attorneys